(173 App. Div. 869)

### TEELE et al. v. MAYER.

(Supreme Court, Appellate Division, First Department.   July 10, 1916.)

CONTRACTS ☞75(2)—CONSIDERATION—PERFORMANCE OF LEGAL OBLIGATION—
CONTRACT OBLIGATION.

   Where public accountants had entered upon the examination of books of railway companies, pursuant to contract to audit their books, an oral promise by the president of the companies, to induce the accountants to continue their work, that he would be individually responsible for their compensation from the companies, it not appearing that he was personally interested in having the companies' books examined, other than his interest as officer and stockholder, or that he received any new consideration for such promise, or that the railway companies had done anything to breach the contract, or furnish just ground for refusal to perform, or that the railway companies' contract was abrogated at or before the oral promise, was without consideration and void, since the doing of an act

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

which one is already under legal obligation to do cannot constitute the consideration for a new contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 280–285; Dec. Dig. ⊙⇒75(2).]

Appeal from Trial Term, New York County.

Action by Arthur W. Teele and others against Joseph B. Mayer. From a judgment for plaintiff upon a verdict, and from an order denying motion for new trial, defendant appeals. Judgment and order reversed, and new trial granted.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, DOWLING, and DAVIS, JJ.

Samuel F. Moran, of New York City, for appellant.
Holmes V. M. Dennis, Jr., of New York City, for respondents.

SCOTT, J. The plaintiffs have recovered a judgment against defendant individually for services rendered as public accountants in the examination of the books of two railway companies operating in the western part of the state of New York. Both of these companies were held in the same ownership, and at the time of plaintiffs' employment the defendant was president of both. The original contract for these services was made between plaintiffs and the defendant, acting as such president, and was evidenced by two letters, one by plaintiffs, dated June 4, 1910, in which they stated the terms upon which they would make the examination, and one by defendant, dated June 8, 1910, in which their services were accepted on the terms stated by them. This is not, as was developed on the trial, the contract upon which plaintiff relies, and it is very apparent, from all the circumstances of the case, that in making this first contract defendant acted in behalf of the railway companies, and that the contract was theirs.

The complaint alleged generally that "between the 30th day of May, 1910, and the 30th day of December, 1910, the plaintiffs did and performed certain work, labor, and services for the defendant, and at the defendant's special instance and request." The bill of particulars stated that the request of defendant to plaintiffs to do the work, and his promise to pay therefor were *oral,* and were on or about *June 16, 1910.* Plaintiffs' counsel in his opening to the jury, which was taken down and forms part of the record, distinctly stated that the original employment of plaintiffs was by defendant as president of the roads, and that his individual obligation, upon which plaintiffs sue, came later. Defendant's individual promise, as testified to by one of the plaintiffs, was made on June 16, 1910. The witness says that on that day he called upon defendant and informed him that work had been commenced on the books, and that, as a result of this slight examination, plaintiffs were not willing to go on with the examination unless defendant would personally be responsible, and that defendant replied, "I will be responsible." The defendant denies that this conversation took place, but on this issue the jury have found in plaintiffs' favor, and for the purposes of this appeal we accept that finding.

The question then remains whether or not, if this conversation took place, it created an enforceable obligation on the part of defendant.

It seems quite clear that the promise,. if made as plaintiffs allege, was obnoxious to the statute of frauds, as being an oral promise to pay the debt or obligation of another; but as the statute was not pleaded it is not available to defendant. That it was not pleaded is doubtless due to the fact that the defendant assumed that the complaint referred to the written contract beween plaintiffs and the railway companies. But, even if the statute of frauds is not available to defendant under the pleadings, there still remains the question whether or not defendant's promise to be responsible for the costs and expenses of the examination is supported by any consideration. There is nothing in the case to indicate, must less to prove, that defendant was personally interested in having the companies' books examined, other than his interest as an officer and stockholder; that is to. say, that he had any special or individual interest not common to other officers. The only consideration that is urged as sufficient to sustain his personal undertaking to pay for plaintiffs' services is the suggestion that plaintiffs went on and completed the work in reliance upon his promise, whereas, but for that, they would have discontinued their work. This suggestion loses sight of the fact that, when the alleged promise was made, the plaintiffs had already undertaken by contract with the railway companies to do this very work, and that they did nothing and no more after defendant's promise than they had already agreed to do. Their letter of June 4th to defendant as president stated that "we will undertake to make an examination of the accounts of your company," etc., upon certain terms which were specified. Defendant's reply was a distinct acceptance of the proposition, and plaintiffs started upon the work before the alleged promise by defendant personally was made. Here was a complete and binding contract between plaintiffs and the railway companies, which plaintiffs were bound to perform, so that it is entirely accurate to say that plaintiffs did no more in reliance upon defendant's promise than they were already bound to do by their contract with the railway companies.

It may be, as respondents argue, that if they had refused to carry out their contract the railway companies could not have recovered substantial damages, but they certainly would have been entitled to at least nominal damages, and the binding obligation of a contract does not depend upon the amount of damages that may be occasioned by its breach. It clearly appears, and no contention is made to the contrary, that at the time the alleged promise of June 16th was made the railway companies, or either of them, had done nothing to breach the contract, or to furnish just ground for a refusal to perform on the part of plaintiffs. If plaintiffs had on June 16th refused to go on with the work they had undertaken, it would have been a distinct and unexcused breach on their part. If, then, plaintiffs agreed to do no more, and in fact did no more, than their contract with the railway companies obligated them to do, their continuance and completion of the work afforded no consideration for defendant's alleged promise. Nothing is better settled than that the doing of an act which a party is under a legal obligation to. perform cannot constitute a consideration for a new contract. Arend v. Smith, 151 N. Y. 502–505, 45 N. E.

872; Vanderbilt v. Schreyer, 91 N. Y. 392-400; Carpenter **v.** Taylor, 164 N. Y. 171-177, 58 N. E. 53.

It appears to be clear, therefore, that even if defendant made the promise alleged there was no sufficient consideration to support it, and that, as was said in Arend v. Smith, supra, "the promise of the defendant was a naked engagement that involved no legal obligation, but rested wholly upon the integrity and good faith of the one who made it, with no power in the courts to compel performance, or to award damages for nonperformance." The trial justice evidently appreciated this weakness in the plaintiffs' case, for he charged the jury in effect that it might find that the contract between plaintiffs and the railway companies had been abrogated at the conversation of June 16th. This was duly excepted to, and was erroneous, because there was no evidence to show, and there was no claim made by plaintiffs, that the original contract with the railway companies had ever been abrogated. All that was claimed was that defendant had agreed to be personally liable for the fulfillment by the railway companies of the original contract. The plaintiffs, therefore, made out no case for submission to the jury, and the defendant's motion for a dismissal should have been granted.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. All concur.